UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:09-CR-176-DCR-HAI |
| | ) | No. 5:14-CV-7352-DCR-HAI |
| | ) | |
| LEON ROZELL NOLAND, JR., | ) | **RECOMMENDED DISPOSITION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On May 14, 2014,[1] pro se Defendant Leon Rozell Noland, Jr. filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody, which he later amended.  D.E. 163; D.E. 167.  Defendant also filed a motion for an evidentiary hearing and to appoint counsel on July 1, 2014.  D.E. 184.  The United States filed a response in opposition to the section 2255 motion and the motion for an evidentiary hearing and to appoint counsel on August 11, 2014.  D.E. 196.  Defendant filed a reply on September 8, 2014.  D.E. 202.  Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), this matter was referred to the undersigned for a recommended disposition.  D.E. 163-1.  For the reasons that follow, Defendant has failed to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255.  Therefore, the Court **RECOMMENDS** that his section 2255 motion (D.E. 163) and his motion for an evidentiary hearing and to appoint counsel (D.E. 184) be **DENIED.**  The Court further **RECOMMENDS** that no Certificate of Appealability be issued.

---

[1] Although Defendant's motion was not docketed by the Clerk until May 30, 2014, Defendant declared under penalty of perjury that he placed the motion in the prison's mailing system on May 14, 2014.  D.E. 163 at 23.  Thus, the Court treats the motion as having been filed on May 14, 2014.  *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (applying the prison mailbox rule of *Houston v. Lack*, 487 U.S. 266, 270–72 (1988) to section 2255 motions).

# I. BACKGROUND

On November 2, 2009, at approximately 8:49 a.m., police officers from the Richmond, Kentucky Police Department responded to the Madison Bank regarding an armed robbery that had occurred that morning.  D.E. 105 at 2.  The employees described the suspect as an African-American male who brandished a black handgun and ordered them to place the money in a dark colored duffel bag.  *Id*.  The suspect left the bank with approximately $36,500.  *Id.*  After reviewing surveillance footage, officers determined that the suspect was approximately six-foot-two-inches, weighed approximately two-hundred-and-twenty pounds, and was wearing a light colored jacket, dark pants, sunglasses, and a dark toboggan.  *Id.* at 3.

While at the crime scene, police were contacted by a local business owner who had observed an African-American male running with a duffel bag towards the Player's Club (a local business) parking lot.  *Id*.  Police officers were then able to obtain a copy of security video footage from the Player's Club parking lot.  *Id.*  The video showed a green Dodge Intrepid with a unique gray painted area or stripe around the bottom of the vehicle.  *Id.*  On the video an individual fitting the suspect's description exited the vehicle and is later seen running back to the vehicle with a duffel bag.  *Id*.  Moreover, while at the scene the police officers obtained a list of "50 one-dollar bills that were given to the suspect."  D.E. 101 at 7-8.

Through further investigation, police learned that the Dodge Intrepid was registered to Regina Alexander, Defendant's ex-girlfriend, in Somerset, Kentucky.  D.E. 105 at 3.  The car had been located at Alexander's residence in Somerset, and a search warrant was obtained and executed.  D.E. 101 at 24.  Alexander told police that Defendant had been in possession of the car, but had dropped it off at her residence earlier that day.  *Id*. at 27.  During the search of the

vehicle, the police located a résumé belonging to Defendant in the glove box. *Id*. at 26. Alexander further stated that Defendant was generally the one who drove the car. *Id*. at 27.

At approximately 1:00 a.m. on November 3, 2009, Major Steve Gregg of the Richmond Police Department spotted Defendant at the Richmond Wal-Mart. D.E. 105 at 4. After Major Gregg witnessed Defendant leave in a gray sport utility vehicle, a marked Richmond Police Department patrol car stopped the vehicle. *Id*. Defendant was taken into custody and a search of his person revealed a key card to a motel room. *Id*. After canvassing local motels, the Richmond Police discovered that Defendant was renting a room at the County Hearth Inn. *Id*. Defendant was arrested after an interview with police. D.E. 101 at 35.

A warrant was obtained for the motel room. D.E. 105 at 4. During a search of the motel room, officers recovered a black duffel bag filled with United States currency amounting to approximately $29,540, sunglasses, a loaded nine millimeter semi-automatic pistol, spare ammunition, clothing, note pads, a Halloween mask, tennis shoes, and handwritten notes pertaining to dollar amounts. *Id*. Police then discovered that they had received the incorrect "bait list" from the bank tellers at the bank. D.E. 101 at 39. After receiving the correct bait list from the bank, the police determined that all fifty one-dollar bills on that bait list were among the bills found in Defendant's motel room. *Id*.

On December 03, 2009, Defendant was indicted by a federal grand jury. D.E. 14. The three-count indictment charged, in Count 1, that Defendant, by use of force, took approximately $37,000 in money belonging to the Madison Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation (FDIC), all in violation of 18 U.S.C. §§ 2113(a) and (d). *Id*. Count 2 charged that Defendant knowingly used and brandished a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). *Id*. Finally, Count 3

charged that Defendant, a convicted felon, possessed a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1).  *Id.*

John Oakley was initially appointed to represent Defendant, but he was replaced by Elizabeth Hughes on November 17, 2009.  D.E. 7.  She represented Defendant until March 29, 2010, when Defendant moved for appointment of new counsel and Stephen D. Milner was appointed.  D.E. 23.  On July 22, 2011, Milner filed a motion to suppress.  D.E. 76.  Defendant had previously filed multiple pro se motions to suppress, along with other various pro se filings and motions.  After Defendant filed a pro se motion to set aside Milner's motion to suppress (D.E. 85), Milner moved to withdraw as Defendant's attorney.  D.E. 86.  Milner was replaced by Scott Hayworth on September 1, 2011.  D.E. 91.  District Judge Coffman allowed Hayworth to file a supplemental motion to suppress and set the matter for an evidentiary hearing.  *Id.*

At the evidentiary hearing on the motion to suppress, Detective Rodney Richardson, Major Steve Gregg, Officer Randall McIntosh, and Detective William O'Donnell, all with the Richmond Police Department, testified.  *See* D.E. 95.  At the conclusion of the hearing, Judge Coffman denied the motion to suppress.  D.E. 101 at 95-99.  She first found that Officer McIntosh had at least a reasonably articulable suspicion when he stopped Defendant shortly after leaving the Wal-Mart.  *Id.* at 97-98.  Moreover, Judge Coffman found that police actions thereafter were "in order."  *Id.* at 97.  Therefore, the motion to suppress was denied.  *Id.* at 99.

On October 25, 2011, Defendant appeared before Judge Coffman and plead guilty to Counts 1 and 2 of the indictment pursuant to a written plea agreement.  D.E. 104.  Defendant's plea agreement included a waiver of the "right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution."  D.E. 105 at 7.  The plea agreement includes a handwritten amendment, initialed by the prosecutor, defense counsel,

and Defendant, that states "the Defendant reserves that right to appeal the Court's denial of his suppression motion (D.E. #76). Pursuant to Rule 11(a)(2), if the Defendant prevails on the appeal of this denial of his motion to suppress, he may withdraw his plea." *Id.* The plea agreement and sealed supplement was accepted and approved conditionally. D.E. 104. On November 1, 2011, Defendant, acting pro se, moved to withdraw his plea of guilty on the basis that he was "coerced and misled by his attorney and the government in believing that by entering into a plea agreement 'Guilty Plea' he could also have standing to challenge the denial of his motion to suppress illegally seized evidence." D.E. 109 at 3. Judge Coffman denied this motion as meritless, finding that it was clear from the agreement and plea colloquy that Defendant's guilty plea was conditional upon his right to appeal the court's suppression ruling. D.E. 117.

On February 9, 2012, Judge Coffman sentenced Defendant to sixty-three months as to Count 1 and eighty-four months as to count 2, to run consecutively, for a total imprisonment term of 147 months. D.E. 133 at 2. Defendant filed a notice of appeal on February 14, 2012. D.E. 134. Pursuant to the Criminal Justice Act, Amy Lee Copeland was appointed to represent Defendant on appeal. D.E. 140. After reviewing the record, appellate counsel moved to withdraw stating that Defendant did not have any meritorious claims on appeal. D.E. 144 at 2. After reviewing the record, and considering Defendant's request to appoint another attorney, the Sixth Circuit agreed with counsel finding "the record reveal[ed] no arguable grounds for appeal." *Id.* The Sixth Circuit found that Defendant entered into the plea agreement knowingly and voluntarily, and that the waiver of appellate rights was valid. *Id.* at 2-5. Moreover, the court found that Judge Coffman did not abuse her discretion by denying Defendant's motion to withdraw his guilty plea. *Id.* at 5. Finally, the court found no error by the Judge Coffman in holding that Defendant's motion to suppress should be denied. *Id.* at 5. Therefore, the judgment

5

with respect to the motion to suppress was affirmed, and the remainder of the appeal was dismissed pursuant to the waiver. *Id.* at 6.

Defendant did not file a petition for a writ of certiorari to the Supreme Court of the United States. On May 14, 2014, Defendant filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody, and later amended the motion and filed a supporting memorandum. D.E. 163, 167. In his motion as amended, Defendant asserts thirteen grounds for relief which have been renumbered by the Court for analytical clarity:[2]

1.  Ineffective assistance of counsel during plea negotiations for coercing Defendant into pleading guilty and failing to inform him of viable defenses. D.E. 163 at 11; 167-2 at 5.

2.  Ineffective assistance of counsel for failing to argue that the prosecution introduced falsified evidence. D.E. 163 at 10.

3.  Ineffective assistance of counsel for failing to argue that the trial judge abused her discretion. D.E. 167-2 at 24.

4.  Ineffective assistance of counsel for failing to raise the issue of fraud on the court committed by the United States by presenting falsified evidence. *Id.* at 28.

5.  Ineffective assistance of counsel for failing to move to quash the indictment because the grand jury heard false evidence and testimony. D.E. 163 at 18.

6.  Ineffective assistance of counsel for failing to move to suppress evidence because law enforcement exceeded a sufficiently particular search warrant. *Id.* at 5; D.E. 167-2 at 10.

7.  Ineffective assistance of counsel for failing to move to suppress evidence because it was discovered with a stale warrant. D.E. 163 at 7; D.E. 167-2 at 13.

8.  Ineffective assistance of counsel for failing to argue that the warrant was insufficiently particular and was overbroad. D.E. 163 at 15-16.

9.  Ineffective assistance of counsel for failing to argue that Defendant's car should not have been seized. *Id.* at 17.

---

[2] The Court notes that "Ground One" of Defendant's motion asserts several grounds for relief, but presents merely a list of claims that are duplicative of the individual grounds asserted later in the motion. Therefore, these claims are addressed individually as stand-alone grounds asserted by Defendant.

6

10.   Ineffective assistance of counsel for failing to argue that there was not federal jurisdiction over his case.  *Id.* at 12.

11.   Ineffective assistance of counsel for failing to raise the issue of fraud committed by the United States by asserting that the F.D.I.C. was a party to his criminal proceeding.  *Id.* at 14.

12.   Ineffective assistance of counsel for failing to argue that Defendant's arrest was without probable cause.  *Id.* at 8; D.E. 167-2 at 15.

13.   Ineffective assistance of appellate counsel for failing to raise successful claims on appeal.  D.E. 167-2 at 7.

## II.  DISCUSSION

### A. Right to Collateral Attack

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255.  To prevail on a section 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  By contrast, to obtain habeas relief based on an alleged non-constitutional error, a defendant must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process."  *Id.* at 488 (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).  As the section 2255 movant, a defendant bears the burden of proving his or her allegations by a preponderance of the evidence.  *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

7

Additionally, the Court recognizes that Defendant is proceeding pro se, or without the assistance of an attorney.  Pro se motions receive a comparatively lenient construction by the Court.  *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985); *See Also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed'").

## B.  Waiver[3]

Numbered paragraph six of Defendant's plea agreement, including handwritten modifications, states:

> "[t]he Defendant waives the right to appeal and the right to attack collaterally the [sic] his guilty plea, conviction, and sentence including any order of restitution. However, the Defendant reserves the right to appeal the Court's denial of suppression motion (D.E. #76).  Pursuant to Rule 11(a)(2), if Defendant prevails on the appeal of this denial of his motion to suppress, he may withdraw his plea."

D.E. 105 at 7.

A defendant "may waive any right, even a constitutional right, by means of a plea agreement."  *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001).  A defendant's knowing and voluntary waiver of his right to pursue collateral relief in a plea agreement will preclude his ability to file a subsequent section 2255 motion.  *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001).  Here, Defendant waived all of his collateral attack rights.

A Defendant is not barred, however, from bringing a collateral attack that concerns the validity of the waiver itself.  *In re Acosta*, 480 F.3d at 422.  In his section 2255 motion and

---

[3] Appellate waivers are not jurisdictional, and the Court is not required to consider them *sua sponte*.  *United States v. Shabazz*, 530 F. App'x 458, 463 n.1 (6th Cir. 2013) (*citing Jones v. United States*, 689 F.3d 621, 624 n.1 (6th Cir. 2012)).  Here, the United States failed to raise the waiver in its response to Defendant's section 2255 motion, but did raise it on Defendant's direct appeal and the Sixth Circuit enforced the waiver.  D.E. 144 at 4-6.  On this record, and given that Defendant had notice of the potential effect of the waiver from his direct appeal, the Court finds it appropriate to assess the validity of the waiver.

supplemental brief, the Defendant does not challenge the validity of the waiver itself. However, Defendant does allege ineffective assistance of counsel on the basis that his attorney and the United States government coerced him into pleading guilty, and that his attorney did not inform him of viable defenses. D.E. 163 at 11; D.E. 167-2 at 5-6. Defendant further states that, if he had been informed of the viable defenses available to him, he would have proceeded to trial instead of pleading guilty. D.E. 163 at 11; D.E. 167-2 at 6. Because of this, Defendant argues, the plea agreement was not valid. *Id.*

The validity of the waiver therefore depends upon the validity of the plea and plea agreement. Defendant has failed, however, to demonstrate that entering into the plea agreement was the result of ineffective assistance of counsel. Moreover, the Defendant knowingly, intelligently, and voluntarily entered into the plea agreement.

### 1. Ineffective Assistance of Counsel During Plea Negotiations

The Constitution requires that a defendant's guilty plea be made knowingly, intelligently, and voluntarily. *Brady v. United States*, 397 U.S. 742, 748 (1970). Where a defendant "enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.'" *Id.* at 56-57 (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). In Ground One, Defendant alleges ineffective assistance of counsel during plea negotiations. Specifically, Defendant alleges that his attorney and the attorney for the United States coerced him into pleading guilty. D.E. 163 at 11; D.E. 167-2 at 5-6.

Moreover, he alleges that his counsel was ineffective because counsel failed to inform him of viable defenses. *Id.* If counsel had not been ineffective, Defendant argues that he "would not have plead guilty but would have insisted on going to trial." D.E. 167-2 at 6. If Defendant can establish that defense counsel[4] was ineffective during the plea process, then he could establish that his plea and plea agreement were not valid.

To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. However, a defendant is not permitted to second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

---

[4] Obviously, Defendant's claim of ineffective assistance premised upon the prosecutor's conduct has no merit as his right to counsel only concerns his own counsel.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

In the context of guilty pleas, in order to prove prejudice "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59. This analysis often requires an assessment of success at trial in the absence of counsel's errors, such as whether an un-pursued affirmative defense would have been successful or whether uninvestigated evidence would have likely changed the outcome. *Id.* When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Courts may approach the Strickland analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697.

Here Defendant's ineffective assistance claim is two-fold. First, he alleges that defense counsel was ineffective because Defendant was "coerced into pleading guilty." D.E. 163 at 11; D.E. 167-2 at 5-6. Second, he claims that counsel was ineffective because counsel failed to inform him of viable defenses. *Id.* First, to the extent that this claim alleges coercion by defense counsel, Defendant provides little factual basis as to how he was coerced into pleading guilty. Defendant states in his reply brief that "the record proves [Defendant]…was coerced by his Trial Counsel Mr. Hayworth to enter a guilty plea[.]" D.E. 202 at 7. Defendant alleges that he

11

misunderstood the terms of his plea agreement and "that he thought he was preserving his rights to appeal and collaterally attact [sic] the denial of his Supplemental Motion to suppress[.]" *Id.* Furthermore, Defendant argues that his indecisiveness at his rearraignment "demonstrated that he did not want to plead guilty[.]" *Id.* at 8.

An examination of the record, however, reveals that the plea agreement was not the product of coercion but was entered into knowingly, intelligently, and voluntarily. Defendant stated during his rearraignment that he was not being forced in any way to plead guilty, and that he was pleading guilty because he was in fact guilty. D.E. 116 at 20. Judge Coffman reviewed with the Defendant his right to have a trial by jury, stating that Defendant "[did] not have to plead guilty today" and that a trial would be scheduled "soon" if Defendant wanted. *Id.* at 20-21. Defendant confirmed that he understood that right and that by pleading guilty he was giving up that right. *Id.* at 21. Defendant stated that no promises had been made to him by the government to entice him to plead guilty, except those contained in the plea agreement. *Id.* at 19-20. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the records are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Furthermore, at no time during the rearraignment proceeding did Defendant indicate that he misunderstood any term of his plea agreement or that he was not pleading guilty voluntarily.

Judge Coffman inquired into Defendant's competency. Defendant stated that he had seen a couple of psychiatrists "on the streets." However, he was unable to provide any names for those "doctors." *Id.* at 9-10. Defense counsel indicated that he had "discussed this case numerous times with [Defendant]." *Id.* at 10. Based on these discussions, defense counsel

indicated that he did not "have any question at all about [Defendant's] competence or ability to understand this colloquy or anything that's going on." *Id.* A report on Defendant's competence was also prepared by the Bureau of Prisons. *See* D.E. 33. Judge Coffman stated that this report indicated that he was "competent to plead and that [Defendant was] competent to stand trial, and that [Defendant was] not incompetent whenever [he] committed the crimes." D.E. 116 at 12.

Defendant also admitted to a sufficient factual basis for the charged crimes. *Id.* at 13-14. Defendant acknowledged he robbed the Madison Bank in Richmond, Kentucky on November 2, 2009. *Id.* at 13. Defendant stated that, during the commission of this crime, he brandished a fire arm, forced the employees to open the safe at gunpoint, and escaped with approximately $36,500 in a duffel bag. *Id.* at 13-14. Both defense counsel and counsel for the United States indicated that they believed that a sufficient factual basis had been established to support the charges in Counts 1 and 2. *Id.* at 14.

Finally, on appeal, the Sixth Circuit found that Defendant's plea was entered into knowingly, voluntarily, and intelligently. *See* D.E. 144 at 2-4 ("Given the district court's colloquy, the validity of Noland's guilty pleas cannot, in good faith, be challenged."). Defendant points out that, during the rearraignment colloquy, he expressed some dissatisfaction with counsel and that this is evidence he did not wish to plead guilty. D.E. 202 at 7-8. However, the dissatisfaction that Defendant expressed during the colloquy was not dissatisfaction with defense counsel's work on his plea agreement, but was dissatisfaction because counsel had not gotten Defendant help with his mental health. D.E. 116 at 11-12. Given that Defendant was found to be competent, such a vague assertion does not affect the validity of Defendant's plea or plea agreement.

Moreover, to the extent that Defendant alleges that he was "coerced" because he was misled regarding his ability to appeal and collaterally attack the denial of his motion to suppress, he has failed to establish that he was misled at all.  The plea agreement specifically states that Defendant preserved the right to appeal the court's ruling on his motion to suppress. *See* D.E. 105 at 7.  It also expressly states that Defendant could withdraw his guilty plea if he prevailed on appeal.  Therefore, this is not a basis upon which to attack the validity of the guilty plea.

When viewed in its entirety, the record does not provide any support for Defendant's claim that he was coerced into pleading guilty.  The colloquy during his rearraignment established that Defendant was competent to plead guilty, that he was aware of his rights, and that he was not being forced into the plea agreement.  Furthermore Defendant was not misled as to the terms of the plea agreement, and admitted that he was in fact guilty of the crimes charged. Defendant has failed to establish (or even sufficiently identify) conduct on counsel's part that could be construed as coercive.  Thus, Defendant has not proven ineffective assistance of counsel on the basis of claimed coercion.

Defendant has also failed to establish that the guilty plea was a product of ineffective assistance of counsel for failure to adequately advise Defendant of viable defenses.  Defendant alleges that, had defense counsel made him aware of several possible defenses, he would have insisted on going to trial.  D.E. 163 at 11.  These defenses include: "none of the witnesses could positively idenifty [sic] Mr. Noland as the Bank Robber.  There were not finger prints, the bait money list did not match any of the money Mr. Noland had in his room, or on his person."  D.E. 167-2 at 6.  Additionally, Defendant states that he was not aware that the Government was admitting "corrected and/or falsified documents into evidence," that the "second search" of the money had been completed "days after the first" and was conducted without a warrant or with a

14

stale warrant, that the FDIC was not a party to the action, and that the federal courts lacked jurisdiction.  D.E. 163 at 11.  Defendant further alleges that he was not aware that defense counsel was not being effective for failing to move "to suppress evidence 'bait money list' or challenge the second search and federal jurisdiction." *Id.*

Again, a criminal defendant has a right to effective assistance of counsel during plea negotiations.  *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012).  The Sixth Amendment right to counsel "applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice."  *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012).  An attorney owes duties to the defendant, including the duty to "keep the defendant informed of important developments in the course of the prosecution."  *Strickland*, 466 U.S. at 687.  Even if deficient performance is established, Defendant must also show that the "outcome of the plea process would have been different with competent advice."  *Id.* at 1384.  In this ineffectiveness claim Defendant can neither establish deficient performance nor prejudice.

With two exceptions, all of the "viable defenses" that Defendant alleges counsel failed to advise him of are independently asserted grounds for relief in his section 2255 motion.  Each of these defenses, as discussed below, are not viable defenses that defense counsel should have discussed with Defendant.  Each argument, or potential grounds for a motion to suppress, would not have been successful.  Therefore, counsel was not ineffective for failing to raise those defenses.  *See Lyons v. Caruso*, 202 F.3d 269, *3 (6th Cir. 1999) (Table) ("counsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance.").  Therefore, Defendant cannot argue that it was deficient performance for defense counsel to fail to advise him of what would have been futile defenses.  Similarly, it cannot be

said that, if Defendant had been informed of the defenses, there was a reasonable probability that the Defendant would have insisted on going to trial. This claim therefore fails with respect to the "viable defenses" that are merely repetitive of grounds in Defendant's section 2255 motion.

Defendant does identify two unasserted defenses that he does not rely upon elsewhere as independent grounds for relief. Defendant alleges that defense counsel should have informed him that there were no eyewitnesses to connect him to the robbery and that there were no fingerprints linking Defendant to the crime. D.E. 167-2 at 6. Defendant does not point to anything in the record supporting his claims that there were no eyewitnesses or that there were no fingerprints linking him to the crime. In fact, testimony from the suppression hearing indicates that there were eyewitnesses to the crime. *See* D.E. 101 at 14 (witness saw "large black male running" towards a "green passenger car" after the crime); *id.* at 8 (bank tellers gave detailed description of the bank robber). Moreover, there was surveillance video footage from inside the bank and from the parking lot of the Player's Club. *Id.* at 8-9, 13-14. No reason, based in either law or fact, is offered as to why a lack of fingerprints would have somehow mitigated the substantial evidence against Defendant so as to establish a reasonable probability of a different result. Defendant has not provided a sufficient factual basis on which to establish deficient performance or prejudice.

Defendant has failed to establish that the plea agreement was not entered into knowingly, intelligently, and voluntarily based on his claimed ineffective assistance of counsel. Therefore, the plea agreement is valid and enforceable. *See Brady*, 397 U.S. at 748.

16

## 2. Defendant Knowingly, Intelligently, and Voluntarily Waived His Right to Collaterally Attack his Guilty Plea, Conviction, and Sentence.

In order for the waiver provision contained in the plea agreement to be valid and enforceable, the defendant must "enter into the waiver agreement knowingly, intelligently, and voluntarily." *Davilla,* 258 F.3d at 451.  Federal Rule of Criminal Procedure 11(b)(1)(N) requires the District Court to "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or collaterally attack the sentence."  Compliance with Rule 11(b)(1)(N) is sufficient to show that the defendant entered into the waiver agreement knowingly, intelligently and voluntarily.  *See United States v. Sharp*, 442 F.3d 946, 950 (6th Cir. 2006); *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

Judge Coffman thoroughly reviewed the waiver provision with Defendant at his rearraignment:

THE COURT:            But you've also agreed that you are not giving up your right to appeal totally, that you're not going to appeal your plea or your conviction or your sentence, but you want to preserve or keep your right to appeal the Court's ruling on your motion to suppress; correct?

THE DEFENDANT:            Yes, ma'am.

THE COURT:            Okay.  And that, of course, is the written—the handwritten change to paragraph one.
And then paragraph six also has a handwritten change, and it says that you are reserving that right to appeal the Court's denial of your suppression motion, and that if you win that appeal that you may withdraw your plea.
You understand that; correct?

THE DEFENDANT:            Yes.

THE COURT:            Yes?

THE DEFENDANT:            Yes, ma'am.

17

| THE COURT: | And so I see initials here.  And I see Rob Duncan's initials, I see Mr. Hayworth's initials, and then I see your initials.  And you did initial those two changes; correct? |
|---|---|
| THE DEFENDANT: | Yes, ma'am. |

D.E. 116 at 5-6.

Later in the hearing Defendant further confirmed his understanding of the provision:

| THE COURT: | Okay.  You, by signing this agreement, have given up your right to appeal or your right to file a separate lawsuit attacking your plea, or your conviction or your sentence.<br>Do you give those rights up voluntarily? |
|---|---|
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | And, of course, as I said earlier, you did not give up your right to appeal this Court's ruling on the suppression motion, and we've already discussed that. |

*Id.* at 17-18.

Finally, Judge Coffman again confirmed Defendant's understanding of the appeal waiver:

| THE COURT: | Do you understand that the only right of appeal you have preserved is the right to appeal my denial of your motion to suppress? |
|---|---|
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | Do you understand that the government has not given up its right of appeal, so the government may appeal my sentence? |
| THE DEFENDANT: | Yes, ma'am. |

*Id.* at 23-24.

18

Because Judge Coffman properly explained that Defendant was waiving his right to collaterally attack his guilty plea, conviction, and sentence, including describing what "attack collaterally" means, and verified that Defendant understood that he was giving up those rights, the requirements of Rule 11(b)(1)(N) were met.  Further, Defendant's plea agreement contains a provision that states that "Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary."  D.E. 105 at 8.  Finally, Defendant's handwritten initials next to the modification of the waiver provision further illustrate his knowledge and understanding of the provision.  *Id.* at 7.  Therefore, Defendant cannot collaterally attack his guilty plea, conviction, or sentence.

The waiver precludes all of Defendant's claims in his section 2255 motion, except for attacks on the knowing and voluntary nature of his guilty plea.  However, even if Defendant had not waived his right to file a section 2255 motion, his claims would fail on the merits for the reasons that follow.

### C. Ineffective Assistance of Counsel Claims

The majority of Defendant's ineffective assistance of counsel claims rest upon Defendant's mistaken characterization of testimony given by Detective Rodney Richardson during the September 20, 2011 hearing on Defendant's motion to suppress.  During this hearing, Detective Richardson testified that once the warrant-backed search of Defendant's motel room was completed, the officers "looked through the cash money that was found in Mr. Noland's motel room, and [law enforcement] couldn't find any of the bait money from the list that the bank provided."  D.E. 101 at 8.  Police then returned to the bank, and learned that the bank teller had given them the wrong "bait money list."  *Id.*  Police obtained the correct list from bank

19

tellers and then compared the money found in Defendant's motel room to "the corrected bait bills [police] got from the tellers[.]"  *Id.* at 39.  Detective Richardson testified that all fifty one-dollar bills identified on the correct bait list were found among the cash seized from Defendant's motel room.  *Id.*

Based upon this testimony, Defendant alleges multiple claims of ineffective assistance of counsel.  Defendant alleges that Police "corrected" the bait list, implying that Police tampered with the list after the search so that the numbers on the list would match the serial numbers on the currency that was found in Defendant's motel room.

Defendant's characterization of this testimony is incorrect.   Detective Richardson testified that, after the search, he returned to the bank, and learned that the bank teller had "just discovered that morning that she had given [law enforcement] the wrong list, because there was four different lists, and she had accounted for three of those.   One of those that she had accounted for was the one she give [Detective Richardson].   There was a fourth list that was not accounted for that she then supplied [Detective Richardson] that morning."  D.E. 101 at 8.  After obtaining the correct list, Detective Richardson testified that law enforcement "went back, looked through the bills again and discovered all 50 one-dollar bills."  *Id.* at 39.

This testimony flatly contradicts Defendant's contention that law enforcement "corrected" or tampered with the bait list.  It establishes that Detective Richardson was initially given the wrong list by bank employees and was later provided the correct list after both he and the bank independently discovered the error.  Then the current list was compared to the cash that had already been seized.  Defendant offers no evidence to the contrary.  Thus, his claims that relate to these facts rest on a mistaken and incorrect factual premise, and fail as a result.  Each claim is, however, addressed in detail below.

**1. Ineffective Assistance of Counsel for Failing to Argue for Falsified Evidence, an Abuse of Discretion by the Trial Judge, Fraud on the Court, and Failing to Move to Quash the Indictment**

Four of Defendant's claims of ineffective assistance of counsel are based completely on his flawed understanding of Detective Richardson's testimony.  Defendant alleges that counsel was ineffective for failing to argue that the prosecution introduced falsified evidence, that the trial judge abused her discretion, and that the United States was committing fraud on the court. D.E. 163 at 10, 14-15, 18; D.E. 167-2 at 17-30.

First, Defendant argues that trial and appellate counsel were ineffective when they failed to argue that law enforcement and the prosecutor were permitted to introduce corrected or falsified evidence.  D.E. 163 at 10; D.E. 167-2 at 17.  Defendant argues that the prosecutor knew that the list was altered but the list was "submitted to both the magistrate judge and Grand Jury to secure an indictment."  D.E. 167-2 at 19.  Moreover, the list was admitted into evidence even though it "was based on hearsay and tampered evidence."  *Id.*  Defendant claims that these actions allowed for fundamental unfairness (*id.* at 20), resulted in a miscarriage of justice (*id.* at 21), and violated several Federal Rules of Evidence (*id.* at 23).

This claims fails because the bait money list was not altered or falsified as Defendant claims.  Moreover, Defendant argues that the Federal Rules of Evidence disallow the use of the bait money list in any of his proceedings, however, the Rules of Evidence do not apply to any proceeding in this case in which any bait money list was actually used or described in testimony. *See* Fed. R. Evid. 1101(d) (Rules do not apply to grand jury proceedings, issuing a search warrant, preliminary examination in a criminal case, and sentencing).  Moreover, each case cited by Defendant purporting to deal with the admissibility and reliability of the bait list does not apply because it involves the admission of evidence at trial.  *See United States v. Davis*, 542 F.2d

21

743 (8th Cir. 1976) (holding that bait money lists are admissible in trial under Federal Rule of Evidence 803(6)); *United States v. McFadden*, 458 F.2d 440 (6th Cir. 1972) (admissibility of a bank robber's note to a teller); *Gass v. United States*, 416 F.2d 767 (D.C. Cir. 1969) (admissibility of medical records); *United States v. Allen*, 619 F.3d 518 (6th Cir. 2010) (discussing tampering with exhibits at trial); *United States v. Knowles*, 623 F.3d 381 (6th Cir. 2010) (admissibility at trial of a copy of a DVD); *United States v. Sandles*, 469 F.3d 508 (6th Cir. 2006) (constitutionality of FDIC officials statement being contained only in prosecution's closing argument); *United States v. Levy*, 904 F.2d 1026 (6th Cir. 1990) (statements by police officers about color and type of car being searched for were not hearsay).  The rules Defendant relies upon did not apply to any proceeding in his case.

Defendant has not established any misconduct by law enforcement or the prosecutor. "[C]ounsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance."  *Lyons v. Caruso*, 202 F.3d 269, at *3 (6th Cir. 1999) (Table).  Thus, it was not deficient performance for counsel to elect to not raise a futile argument that law enforcement and the prosecutor were introducing corrected or falsified evidence.

Similarly, Defendant's next claim fails.  Defendant claims ineffective assistance of trial and appellate counsel for failing to raise the issue that the trial judge abused her discretion "by allowing improper and prejudicial evidence 'corrected bait list' money into evidence.  D.E. 167-2 at 24.  Defendant argues that the "probative value" of the correct bait money list "is substantially outweighed by the danger of unfair prejudice, therefore, it should have been excluded pursuant to Rule 403."  *Id.* at 26.  He contends failing to exclude it "constitutes an abuse of discretion."  *Id.*  Defendant further alleges that, by admitting the bait money list and

money, along with the testimony of Detective Richardson, the District Court committed cumulative error necessitating a new trial in his case.

In the context of ineffective assistance of appellate counsel, the *Strickland* standard controls. In order to prove prejudice, a defendant "must demonstrate that, but for counsel's poor performance, 'there is a reasonable probability' the result of his appeal would have been different." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Strickland*, 466 U.S. at 694). "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit." *Id.* (citing *Greer v. Mitchell*, 264 F.3d 633, 676 (6th Cir. 2001)). Further, "appellate counsel is not required to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 344 (6th Cir. 2003).

The Rules of Evidence did not apply to any proceeding in which the bait list was used in this case. Thus, it would have been frivolous for either trial or appellate counsel to raise the evidentiary objections Defendant identifies here. Therefore, Defendant has failed to establish ineffective assistance.

Next, Defendant claims that trial and appellate counsel were ineffective for failing to raise the issue of "fraud on the court." D.E. 167-2 at 28. Defendant argues that the prosecutor, Detective Richardson, and Defendant's trial counsel "were aware that the original bait list did not match the bills found in [Defendant's] motel room or on his person[.] D.E. 167-2 at 29. With this knowledge, these parties "thereafter redrafted another 'corrected' or fabricated bait list." *Id.* This, Defendant argues, was a "plan or scheme designed to improperly influence the court in its decision." *Id.*

There is no evidence in the record to support Defendant's claim that law enforcement, the U.S. attorney, and defense counsel maintained a plan or scheme to defraud the court. Again,

Defendant has mischaracterized the testimony of Detective Richardson as meaning that he altered the bait money list to match the money found in Defendant's motel room.  Because the record conclusively refutes this contention, Defendant cannot establish deficient performance of trial or appellate counsel for failing to assert this futile and frivolous argument.

Finally, Defendant alleges ineffective assistance of counsel for failure to move to quash the indictment because the grand jury heard false evidence and testimony.  D.E. 163 at 18.  Again, Defendant relies on the "corrected" bait money list as false evidence that was presented to the grand jury.  *Id.*  He further states that the prosecutor "testified to the Grand Jury that the serial numbers on the money found in my room matched the serial numbers on the original bait money list."  *Id.*  Here, Defendant's claim fails not only because the evidence was not falsified, but also because he has failed to provide any factual basis for his assertion that the prosecutor falsely "testified" before the grand jury.  *See Aguirre v. United States*, No. 2:06-CR-76, 2012 WL 3191958, *6 (E.D. Tenn. Aug. 2, 2012) ("A motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations.").  This claim fails.

### 2. Ineffective Assistance of Counsel for Failing to Move to Suppress Evidence Because Police Exceeded a Sufficiently Particular Search Warrant

Defendant's next claim alleges that counsel was ineffective because he failed to move to suppress evidence, specifically the cash found in his motel room, on the basis that the search exceeded a sufficiently particular warrant.  D.E. 163 at 5; D.E. 167-2 at 10.  Defendant argues that when the search of his motel room was conducted, police had "a warrant and a bait list with serial numbers particularly describing the bait money stolen from the Richmond 'Madison' Bank."  D.E. 167-2 at 12.  According to Defendant, his constitutional rights were violated when police seized the cash found in the room "even after establishing that none of the money in the room matched the bait list."  *Id.* at 12.  According to Defendant, the attached bait list "left no

discretion in determining the money to be seized[.]"  D.E. 163 at 5.  Therefore, Defendant argues that counsel should have moved to suppress the evidence seized from his motel room, specifically the cash.  D.E. 167-2 at 12.

Defendant's claim implicates the interplay between the *Strickland* standard and the elements of Fourth Amendment search and seizure law.  The Sixth Circuit has held that while "free-standing Fourth Amendment claims cannot be raised in collateral proceedings under either § 2254 or 2255, the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue."  *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382–83 (1986)).

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  Courts may approach the Strickland analysis in any order, and an insufficient showing on either prong ends the inquiry.  *Strickland*, 466 U.S. at 697.  Defendant has not established prejudice because he has not proven that a motion to suppress on this basis would have had any merit under Fourth Amendment precedent, thus this claim fails.

The Fourth Amendment provides "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly* describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV (emphasis added).  "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another."  *Marron v.*

25

*United States*, 275 U.S. 192, 196 (1927).  "Particularity 'eliminates the danger of unlimited discretion in the executing officer's determination of what is subject to seizure.'"  *United States v. Greene*, 250 F.3d 471, 476-77 (6th Cir. 2001) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1026 (6th Cir. 1991).

Federal prisoners bear the burden of establishing that they are entitled to relief under 28 U.S.C. § 2255.  *See McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").  Defendant is challenging the terms and particular language of the search warrant, but has failed to provide the warrant for the Court's review.  Without the warrant, the Court cannot evaluate whether law enforcement exceeded its scope when they searched Defendant's motel room.  Therefore, Defendant has failed to meet his burden of establishing that the police exceeded a sufficiently particular warrant.

Alternatively, the United States provided an affidavit of defense counsel, Scott Hayworth. D.E. 196-1.  According to Mr. Hayworth, the warrant authorized the seizure of "any and all United States currency," without being limited by the bait list.  *Id.* at 2.  Thus, on this record, Defendant is incorrect in his assertion that, by seizing the money that was not on the bait list, law enforcement exceeded the scope of the warrant. The warrant authorized the seizure of more currency than just that identified on the bait list.

Moreover, Mr. Hayworth stated that the search warrant also contained an authorization for the seizure of "property or things which consist of evidence which tends to show the offense of violation of KRS 515.020."  *Id.*  Defendant does not argue that the money seized would not constitute evidence that tended to show a violation of Kentucky Revised Statute 515.020 (first-

degree bank robbery).   Therefore, even though the money seized from the motel room did not match the first bait list that was attached to the warrant, given the circumstances of the location of the cash (in a duffel bag of the same type used in the robbery) and the amount found, the money clearly fell within the authorization to seize evidence of first-degree bank robbery.

Finally, the case law cited by Defendant is not supportive of his position.   The actions of law enforcement did not, based upon the record, exceed the particular limits of the search warrant as described by Mr. Hayworth.   The search of the motel room cannot be construed as a general search and law enforcement cannot be said to have seized property not described in the warrant.   Thus, Defendant cannot establish either deficient performance or prejudice because he has not proven that his Fourth Amendment claim was meritorious.   This claim fails.

### 3. Ineffective Assistance of Counsel for Failing to Move to Suppress Evidence Because it was Discovered "With a Stale Warrant"

Defendant's next claim involving the "corrected" bait list is that counsel was ineffective for failing to move to suppress evidence because it was discovered "with a stale warrant."   D.E. 163 at 7; D.E. 167-2 at 13-14.   According to Defendant, police violated his Fourth Amendment rights when they, two days after the original search and seizure, compared the "corrected" bait list with the money seized from his motel room.   D.E. 163 at 7.   Defendant argues that this was a search done without officers obtaining a second search warrant, and in fact was completed by using a stale warrant.   D.E. 167-2 at 13.   Defendant has not established that comparing the lawfully seized currency with the correct bait list violates the Fourth Amendment.   Therefore, defense counsel was not ineffective for failing to move to suppress this evidence.

Defendant offers no justification as to why the actions of law enforcement, in comparing the correct bait money list with the money seized pursuant to a valid search warrant, violated the Fourth Amendment.   As found above, the cash was properly seized in the first instance because

27

the warrant authorized the seizure of "any and all United States currency." D.E. 196-1 at 2. The comparison of the bills to the second bait list was merely an analysis of evidence already lawfully obtained. Law enforcement was not required to get a second warrant to compare the money seized to the correct bait money list.

Finally, the case law cited by Defendant does not support his position. In *United States v. Keszthelyi*, 308 F.3d 557 (6th Cir. 2002), the court addressed a search of a residence on the day after a warrant-backed search. No warrant authorized the second search. Here, Defendant does not allege that law enforcement re-entered his motel room without a second warrant. Instead, he contends the impermissible search occurred when law enforcement compared the money already seized with the correct bait money list. The money was seized pursuant to a valid search warrant as potential evidence of a bank robbery. Once seized, Defendant did not have a reasonable expectation of privacy in this money and therefore no search occurred within the protection of the Fourth Amendment. Because Defendant has not established that a motion to suppress on this basis would have been meritorious, this claim of ineffective assistance of counsel fails.

### 4. Ineffective Assistance of Counsel for Failing to Argue that the Warrant was Insufficiently Particular and Overbroad

Defendant argues in claim eight that counsel was ineffective for failing "to argue that the warrant was insufficiently particular" and "overbroad." D.E. 163 at 15-16. He contends that the warrant "was insufficiently particular because Richmond Police had access to a specific inventory of the money stolen and other items in the bank robbery." *Id.* at 15. Moreover, Defendant argues that the warrant was overbroad and allowed law enforcement to "seize anything they saw in [Defendant's] motel room" because the warrant "authorized a search of any evidence relating to the commission of a crime[.]" *Id.* at 16.

28

The particularity requirement 'eliminates the danger of unlimited discretion in the executing officer's determination of what is subject to seizure.'" *Greene*, 250 F.3d at 476-77. "While a 'general order to explore and rummage' is not permitted, 'the degree of specificity required is flexible and will vary depending on the crime involved and the type of items sought.'" *Id*. at 477 (quoting *United States v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999)). "[A] description is 'valid if it is as specific as the circumstances and the nature of the activity under investigation permit.'" *Id.* Moreover, the "use of a generic term or general description is not per se violative of the [F]ourth[.]" *Blakeney*, 942 F.2d at 1027.

Federal prisoners bear the burden of establishing that they are entitled to relief under 28 U.S.C. § 2255. *McQueen*, 58 F. App'x at 76. Defendant again attacks specific terms of the search warrant, but has failed to provide the search warrant or cite to any evidence in the record in support of his claim. The Court cannot find that the warrant was "overbroad" or "insufficiently particular" without proof as to the contents of the warrant. Therefore, Defendant cannot establish that either of these arguments would have been meritorious, and thus cannot show ineffective assistance in counsel's failure to raise them with Defendant directly or through a motion to suppress.

As discussed above, defense counsel Scott Hayworth stated in his affidavit that the warrant allowed seizure of "any and all United States currency." D.E. 196-1 at 2. Moreover, he noted that the warrant contained an authorization for the seizure of "property or things which consist of evidence which tends to show the offense of violation of KRS 515.020." *Id.* Based upon this language, the warrant was not overbroad or insufficiently particular. Defendant alleges that the warrant was insufficiently particular because law enforcement had "access to a specific inventory of the money stolen[.]" D.E. 163 at 15. This is presumably an argument that the

warrant was overbroad in allowing the seizure of "any and all United States currency" when it could have been limited to the bait list.

Accepting that Mr. Hayworth's affidavit accurately describes the warrant, it was not overbroad or insufficiently particular. *See Greene*, 250 F.3d at 478 ("[G]eneral descriptions of property are appropriate if descriptions of specific types of that property have already been furnished[.]") Defendant claims allowing the "search of any evidence relating to the commission of a crime" without limitation as to the specific type of crime results in overbreadth. However, as Scott Hayworth stated in his affidavit, the search was limited to evidence of violations of first-degree bank robbery and therefore Defendant's claim that it was overbroad is incorrect. Defendant has not established that an argument or motion to suppress on the basis that the warrant was insufficiently particular and overboard would have had any merit. Therefore, Defendant cannot establish ineffective assistance of counsel. This claim fails.

### 5. Ineffective Assistance of Counsel for Failing to Argue that Defendant's Car Should Not Have Been Seized

Defendant next alleges ineffective assistance of counsel for failing to argue that his car should not have been seized. D.E. 163 at 17. He contends that law enforcement seized his 2004 Chevy Trailblazer "that was not described under seizure warrant" and was a different make and model than the car that "the bank robber was known to be driving[.]" *Id.* According to Defendant, this seizure was illegal, and violated his Fourth, Fifth, and Fourteenth Amendment rights. *Id.*

It appears that Defendant challenges the seizure of the vehicle he was driving when he was taken into custody (which was not the car used during the bank robbery). "Discretion as to impoundment is permissible 'so long as that discretion is exercised according to standard criteria

and on the basis of something other than suspicion of evidence of criminal activity.'" *United States v. Jackson*, 682 F.3d 448, 454 (6th Cir. 2012) (citations omitted).   "The Fourth Amendment permits impoundment decisions…that are objectively justifiable…regardless of an officer's subjective intent." *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001). Moreover, "an impoundment decision will not be impermissible simply because alternative to impoundment might exist." *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013).

Detective Richardson testified that law enforcement had the vehicle towed after Defendant was taken to the Richmond Police Department.   D.E. 101 at 30.   After recovering items from Defendant's motel room, law enforcement obtained a search warrant for the vehicle and executed the search.   *Id.* at 39.   Law enforcement recovered paperwork concerning the purchase of the vehicle, some frozen dinners, floor mats, and other miscellaneous items from the vehicle's interior.   *Id.*

Defendant provides no authority that this procedure violated any standard criteria, nor does he argue that the impoundment was objectively unreasonable.   D.E. 163 at 17.   He simply argues that, because the bank robbery suspect was seen driving a different vehicle, his vehicle was illegally seized.   *Id.*   However, law enforcement is generally permitted, when a person is arrested away from the home, to "impound the personal effects that are with him at the time to ensure the safety of those effects." *Cabbler v. Superintendent, Virginia State Penitentiary,* 528 F.2d 1142, 1146 (4th Cir. 1975).

Because raising this claim would have been futile, Defendant has failed to establish deficient performance.   Further, Defendant has failed to demonstrate that even if this had not been a frivolous argument, that he was prejudiced by counsel failing to raise it.   He does not argue that this particular "illegal" seizure had any effect upon the outcome of the proceedings

against him.  The Court cannot conceive any mitigating effect this argument, if successful, would have had against the substantial evidence against him.  Therefore, this claim fails.

### 6. Ineffective Assistance of Counsel for Failing to Argue that there was no Federal Jurisdiction over his case and that the United States Committed Fraud Regarding Federal Jurisdiction

Defendant's next claim of ineffective assistance of counsel is for failing to argue that the federal courts did not have jurisdiction over his case.  D.E. 163 at 12.  He contends that he was accused of taking money that was insured by the FDIC, but that FDIC "insurance covers the deposits of a bank in the event of the insolvency and closure of the bank 'only.'"  *Id.*  According to Defendant, the FDIC does not insure the money against robbery or theft.  *Id.*  Therefore, Defendant argues that the money stolen was not insured by the FDIC, thus the FDIC was not a party to the action and the federal statute did not apply.  *Id.* at 12-13.  Additionally, Defendant argues that counsel was ineffective for failing to argue that the United States "committed a fraudulent act by asserting that the F.D.I.C. was a party to [Defendant's] criminal prosecution and using the F.D.I.C. to bring and convict [Defendant] on Federal Bank Robbery."  *Id.* at 15.

Defendant pled guilty to a violation of 18 U.S.C. § 2113(a) and (d), which require, in relevant part, that a person commits bank robbery when "by force and violence, or by intimidation, [he] takes, or attempts to take…any property or money or any other thing of value belonging to or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association[.]"  18 U.S.C. § 2113(a).  Section 2113(f) defines "bank" to include, among other entities, "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation."  18 U.S.C. § 2113(f).  This language is directly contrary to Defendant's argument because it is immaterial under the statute whether the FDIC insures the bank against robbery.  *See United States v. Brice*, 373 F. App'x 561, 562 (6th Cir. 2010) ("It is

therefore of no consequence that FDIC does not cover losses due to robbery.") (citing *United States v. Watts*, 256 F.3d 630, 633-34 (7th Cir. 2001).  The statutory definition merely requires that the FDIC insure the institution's deposits in general instead of any particular currency, whether stolen or not.

Defendant cannot establish deficient performance of counsel in failing to raise this argument because it would have been futile.  Moreover, counsel was not deficient for failing to claim that the United States was committing fraud. Therefore, this claim fails.

### 7. Ineffective Assistance of Counsel for Failing to Argue that his Arrest was Without Probable Cause

Defendant's next claim of ineffective assistance of counsel is for failing to argue that Defendant's arrest was not supported by probable cause.  D.E. 163 at 8; D.E. 167-2 at 15. Defendant alleges that there was not probable cause for arrest until after the second "search" was conducted with the corrected bait list.  D.E. 167-2 at 16.  He claims that case law supports that a "search may not precede arrest and serve as part of it's [sic] justification[.]"  *Id.*  Defendant appears to advance two separate arguments.  If Defendant's argument is construed as an attack on probable cause to arrest prior to the search of the motel room, the claim fails because law enforcement had probable cause to place Defendant under arrest at that time, so counsel was not ineffective in failing to raise this issue.

Defendant was placed under formal arrest only after being interviewed by police.  D.E. 101 at 35.[5]  Law enforcement established the suspect's approximate height from the surveillance footage at the bank.  *Id.* at 13 (Detective Richardson describing the method law enforcement used to determine that Defendant was six foot two inches tall).  Moreover, from having canvassed the area, law enforcement established that witnesses saw a "large black male," who

---

[5] Defendant does not contend that an arrest occurred prior to this time.

may have been carrying a bag, running to a parked green car. *Id.* at 14. After reviewing more surveillance footage, law enforcement determined that the suspect entered a green Dodge Intrepid, with a "gray painted area at the bottom of the vehicle" that "goes all the way around." *Id.* at 16, 25. Based on this specific information, law enforcement broadcasted an "attempt to locate" a green Dodge Intrepid with a gray stripe on the bottom. *Id.* at 44. Shortly thereafter, a police detective with the Eastern Kentucky University Police Department identified the car and images of Defendant from "another criminal case" in which Defendant was a suspect. *Id.* at 18. The vehicle was then located in Somerset, Kentucky, and during a search of the vehicle pursuant to a search warrant, law enforcement located a résumé belonging to Defendant. *Id.* at 24. Defendant's ex-girlfriend confirmed that he had used the car the day of the robbery. *Id.* at 37

Defendant's photo was circulated among several law enforcement officers and Major Gregg of the Richmond Police Department positively identified Defendant from the photo that Detective Richardson had sent him. At that time, Defendant was in Wal-Mart. *Id.* at 60-62. Law enforcement stopped Defendant shortly after leaving Wal-Mart and he was taken to the police department. *Id.* at 28-31. After an interview of Defendant conducted by Detective Richardson, Defendant was subsequently arrested. *Id.* at 35.

"[A]n arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999). An arrest is supported by probable cause if, at the time of arrest, the arresting officer had "reasonably trustworthy information" that is sufficient to warrant a reasonable person to "conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (citing *Beck v. Ohio*, 379 U.S. 89, 91

34

(1964)).  In order to evaluate whether probable cause existed at the time of arrest, courts use a totality of the circumstances test.  *Id.*

The totality of the circumstances surrounding Defendant's arrest establish that law enforcement had probable cause to believe that Defendant had committed a crime.  The investigation had established that Defendant matched the physical description of the bank robber. Video from both the bank and local businesses corroborated the witness statements and directly tied the robbery suspect to the green Dodge Intrepid that had an unusual gray stripe around the bottom.  From this evidence, law enforcement was able to establish that the car had been used in another crime in which Defendant was a suspect.  Furthermore, law enforcement was able to locate the vehicle, establish that Defendant was a frequent user of the vehicle, and that he had used the vehicle that day.  Finally, law enforcement found a résumé belonging to Defendant after searching the vehicle.  The evidence available to law enforcement amply provided probable cause to place Defendant under arrest before Defendant's motel room was searched.

Second, Defendant's argument can be construed as an assertion that law enforcement's actions in comparing the seized money with the correct bait list somehow invalidated the probable cause for his arrest.  However, Defendant has failed to provide any authority that would provide him with any relief.  The Court first notes that Defendant was arrested before the search of his motel room occurred, and therefore the search of the motel room had no effect on the probable cause analysis.  D.E. 101 at 35.  Moreover, Defendant again mischaracterizes law enforcement's actions in comparing the money seized from Defendant's motel room to the correct bait list as a "search."  As noted previously, law enforcement merely analyzed evidence lawfully obtained instead of conducting a search under the Fourth Amendment.  However, even

if this was a violation of Defendant's Fourth Amendment rights, he has failed to establish that this would have any effect on the probable cause that served as the basis for his arrest.

The case law cited by Defendant does not support either of Defendant's potential positions. Each case he cites involves a search incident to arrest, which is legally distinct from law enforcement's conduct concerning Defendant's arrest. *See Smith v. Ohio*, 494 U.S. 541 (1990) (arrest based on drug paraphernalia found in bag before arrest); *Sibron v. Peters*, 392 U.S. 40 (1968) (search after arrest was improper because the arrest was not based on probable cause); *United States v. Williams*, 170 F. App'x 399 (6th Cir. 2006) (officers permitted to search defendant's person and vehicle following a lawful and full custodial arrest). Here, the search that Defendant challenges throughout his motion was not incident to his arrest.

Defendant has failed to prove that his arrest was not supported by probable cause. Moreover, he has failed to establish that the comparison of the seized money to the correct bait list had any effect on probable cause for his arrest. Therefore, he has failed to establish that either argument would not have been frivolous and thus he cannot prove that counsel was deficient. This claim fails.

### 8. Ineffective Assistance of Appellate Counsel for Failing to Raise Successful Claims on Appeal

Finally, Defendant claims ineffective assistance of appellate counsel for failing to raise on direct appeal "obviously winning claims." D.E. 167-2 at 7. Defendant alleges that appellate counsel failed to raise eleven separate claims that would have been successful on direct appeal, thus violating his Fifth, Sixth, and Fourteenth Amendment rights. *Id.* at 7-10. Ten of the eleven "obviously winning" claims are the same claims asserted as stand-alone arguments in Defendant's section 2255 motion. The sole claim that is not otherwise raised in his section 2255

36

motion is "that [Defendant] had an actual conflict of interest with his trial counsel and had filed criminal charges against him." *Id.*

In the context of ineffective assistance of appellate counsel, the *Strickland* standard controls.  In order to prove prejudice, a defendant "must demonstrate that, but for counsel's poor performance, 'there is a reasonable probability' the result of his appeal would have been different." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Strickland*, 466 U.S. at 694).  "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit." *Id.* (citing *Greer v. Mitchell*, 264 F.3d 633, 676 (6th Cir. 2001)).  Further, "appellate counsel is not required to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 344 (6th Cir. 2003).  Therefore, in order to prevail on this claim, Defendant must show that each "obviously winning" claim had a reasonable probability of success on appeal.

Other than the claim of conflict of interest, each claim that Defendant alleges should have been asserted by appellate counsel is a form of an ineffective assistance of counsel claim.  *See* D.E. 167-2 at 7-9.  "As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations."  *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990).  Ineffective assistance claims are, therefore, typically pursued in post-conviction proceedings.  *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002).  Courts have recognized an exception to this general rule "when the existing record is adequate to assess properly the merits of the claim."  *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998).

Defendant has failed to provide any factual basis to show that the record on direct appeal was adequate enough to "assess properly the merits" of any of the ineffective assistance claims.

37

Therefore, the claims would not have been considered on appeal.  He has pointed to no evidence to the contrary, and thus, he has failed to show that there was a reasonable probability the claims would have been successful on appeal.  Moreover, as made clear above, Defendant's unasserted ineffectiveness theories have no merit.  Therefore, even if they were considered on direct appeal, no claim would have been successful.

Similarly, Defendant has failed to prove that his claim "that [Defendant] had an actual conflict of interest with his trial counsel and had filed criminal charges against him" would have, if considered, been successful on appeal.  Defendant has the burden to establish that he is entitled to relief.  *McQueen*, 58 F. App'x at 76.  Defendant has provided only this bare assertion of a conflict of interest, without providing any factual basis in support.  Therefore, he has not established that the claim, even if it would have been considered on direct appeal, would have been successful.

Finally, Defendant contends his appellate counsel should have asserted that his guilty plea "was made unknowingly, unintelligently, and involuntarily."  D.E. 167-2 at 9.  However, the Sixth Circuit addressed this issue on direct appeal and found that "the validity of Noland's guilty pleas cannot, in good faith, be challenged."  D.E. 144 at 4.  Thus, this claim has no merit whatsoever.  Because Defendant cannot establish that any of the claims he alleges appellate counsel should have raised on direct appeal would have been successful, he has failed to establish ineffective assistance of appellate counsel.

### III.  CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the

38

constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement.  28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).  For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, a movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

The Court has considered the issuance of a Certificate of Appealability as to each and every claim presented by Defendant.  However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.  Moreover, nearly all of Defendant's claims are procedurally barred by his collateral attack waiver, but no jurist of reason would find that the question of whether the motion states a valid claim of the denial of a constitutional right is debatable.  Nor would any jurist of reason find the correctness of the procedural rulings above to be debatable.

## IV.  AN EVIDENTIARY HEARING IS NOT REQUIRED

Defendant has filed a motion for an evidentiary hearing and a motion to appoint counsel. D.E. 184.  "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)).  Here, the record conclusively shows that Defendant is entitled to no relief.  Thus, an evidentiary hearing is not

required.   Appointment of counsel is required when an evidentiary hearing is warranted or necessary for effective discovery.   *See* Rule 6(a), Rules Governing Section 2255 Cases; Rule 8(c), Rules Governing Section 2255 Cases.   Here, no evidentiary hearing is required and discovery is not needed, therefore appointment of counsel is not necessary.

## V.  RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion (D.E. 163) for 28 U.S.C. § 2255 relief.   Because the record conclusively shows that Defendant is not entitled to relief on the denied grounds, the motion for an evidentiary hearing and appointment of counsel (D.E. 184) should be **DENIED**.   The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability as to all claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.   *See also* Rules Governing Section 2255 Proceedings, Rule 8(b).   Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.   Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.   *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 23rd day of April, 2015.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge